UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————x

REGIS J. MOELLER, Individually and on       :    Civil Action No.
Behalf of All Others Similarly Situated,    :
                                            :    <u>CLASS ACTION</u>
                    Plaintiff,              :
                                            :    CLASS ACTION COMPLAINT
        vs.                                 :
                                            :
ROYAL BANK OF CANADA and RBC                :
CAPITAL MARKETS, LLC,                       :
                                            :
                    Defendants.             :
                                            :    <u>DEMAND FOR JURY TRIAL</u>
————————————————————x

By and through his undersigned counsel, Regis J. Moeller ("Plaintiff") brings this class action against defendants Royal Bank of Canada ("Royal Bank") and RBC Capital Markets, LLC ("RBC CM") (collectively, "Defendants" or "RBC"), upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, including, but not limited to, review and analysis of: (a) documents created and distributed by Defendants; (b) public filings made by RBC with the U.S. Securities and Exchange Commission; (c) press releases disseminated by Defendants; and (d) news articles, websites, and other publicly available information concerning Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.      Plaintiff brings this class action to recover damages arising out of Defendants' unlawful conduct related to their cash sweep program provided to customers through RBC CM, the Insured Deposit Program ("IDP"). Under the IDP, Defendants swept idle customer cash into interest-bearing deposit accounts at banks selected by, and affiliated with, Defendants.

2.      The cash sweep accounts were highly lucrative for Defendants and their affiliated banks but paid unreasonably low, below-market interest rates to customers. Defendants used the IDP to generate massive revenue for themselves at the expense of their customers. As of December 31, 2024, for example, RBC's subsidiary banks reported holding over $18.5 billion in affiliate sweep deposits, including deposits swept from RBC CM customer accounts under the IDP. In exchange, the banks paid interest rates as low as 0.01%. While paying such meager rates to customers, RBC reported that its interest-bearing assets earned an average rate of 5.79% interest in 2024. The staggering difference, or "spread," between the miniscule rates paid to customers,

including RBC CM customers, and the average returns earned from the use of this low-cost cash contributed in large part to RBC's reported net interest income of over $19.6 billion for the year.

3.      Defendants' use of the IDP to enrich themselves by paying unreasonably low interest rates to customers breached their fiduciary duties, contractual obligations, and violated New York law.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) and (6), because: (a) there are 100 or more class members; (b) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (c) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

5.      This Court has personal jurisdiction over Defendants because, during the relevant time period, Defendants had offices in and did sufficient business in, and had sufficient contacts with New York, and intentionally availed themselves of the laws and markets of New York through the promotion, sale, marketing, distribution, and operation of their products and services.

6.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because, during the relevant time period, Defendants transacted business and had offices in this District, and many of the acts and practices complained of herein occurred in substantial part in this District.

## PARTIES

**Plaintiff**

7.      Plaintiff Regis J. Moeller is a citizen of Pennsylvania. During the relevant time period, Plaintiff held an individual retirement account with RBC enrolled in the IDP. Idle cash Plaintiff held in his account was swept into the banks that Defendants selected in their discretion at the unreasonably low interest rates alleged herein.

**Defendants**

8.      Defendant Royal Bank of Canada is headquartered at Royal Bank Plaza, 200 Bay Street, Toronto, Ontario, M5J 2J5. Royal Bank is a financial services company that conducts business throughout Canada and the United States, with approximately $945 billion in assets under management and over 98,000 employees. Royal Bank is the parent company and control person of RBC CM.

9.      Defendant RBC Capital Markets, LLC is a Delaware limited liability company with headquarters at 200 Vesey Street, 9th Floor, New York, NY 10281. RBC CM is a broker-dealer and a Registered Investment Advisor that offered brokerage and investment advisory services to its client base. RBC CM acts as its customers' agent for the establishment, maintenance, and operation of Defendants' IDP. RBC CM is a wholly owned subsidiary of, and controlled by, Royal Bank.

## SUBSTANTIVE ALLEGATIONS

10.      Customers of financial institutions often have idle cash in their investment accounts, including cash from deposits, dividends, and proceeds from the sale of securities. A "cash sweep" is a method used by financial institutions to automatically transfer customers' idle cash into safe interest-earning options. In many instances, the idle cash is "swept" into Federal Deposit Insurance Corporation ("FDIC")-insured deposit accounts or money market funds. Cash sweep services provide financial institutions with a low-cost source of cash to be used for traditional lending activities, maximizing revenue. Profits the financial institutions earn from swept funds are significantly higher than the rates paid to customers enrolled in the IDP.

**Background on Defendants' IDP**

11.      During the relevant time period, Royal Bank's wholly owned subsidiary, RBC CM, offered, and still offers, brokerage and investment advisory services to customers nationwide.

- 3 -

These services include the IDP, an automatic cash sweep program through which RBC CM acts as broker and agent to sweep customer cash.

12.     RBC CM provided the IDP to customers enrolled in several types of brokerage and retirement accounts and incorporated the terms of the IDP in the agreements governing each account-type (as further described in the following section).

13.     Under the IDP, RBC CM automatically swept eligible clients' idle cash balances into interest-bearing deposit accounts ("Deposit Accounts") at banks or other depository institutions selected by Defendants, including both affiliated banks, including City National Bank and RBC Bank (Georgia), N.A. (collectively, "RBC Affiliate Banks"), and unaffiliated banks (together with the RBC Affiliate Banks, "Program Banks"). Funds in the Deposit Accounts were insured by the FDIC up to a maximum value determined by account type ("Total Program Coverage"). For Direct Retirement Accounts (defined below), the only Program Banks utilized for sweep deposits were the two RBC Affiliate Banks, which provided Total Program Coverage up to $498,000. For all other sweep accounts, the IDP provided up to $5,000,000 in Total Program Coverage.

14.     Once available cash balances met the Total Program Coverage amount, any additional cash deposits ("Excess Funds") would be deposited or invested in a Designated Excess Investment ("DEI"). For non-retirement accounts, the DEI was a Deposit Account at one or more excess banks, including a primary excess bank ("Primary Excess Bank"). By default, the Primary Excess Bank was City National Bank, an RBC Affiliate Bank. For retirement accounts, the DEI was shares of the money market Federated Hermes Treasury Obligations Fund – AS Shares ("Federated Hermes Fund"), unless the customer designated the Federated Hermes Fund as ineligible, in which case the Excess Funds were placed into Deposit Accounts at City National

Bank without regard to deposit limits. Customers were unable to opt-out of both the Federated Hermes Fund and Deposit Accounts at City National Bank for Excess Funds.

15.     The following is a non-exhaustive list of unaffiliated Program Banks within the IDP:  Citibank, N.A.; U.S. Bank, N.A.; American Express National Bank; Truist Bank; HSBC Bank, USA, N.A.; UMB Bank, n.a.; State Street Bank and Trust Company; The Bank of New York Mellon Corporation; M&T Bank Corporation; Bank of Baroda; Israel Discount Bank of New York; Union Bank & Trust Company; BankUnited, N.A.; EagleBank; Atlantic Union Bank; Synovus Financial Corp.; TriState Capital Bank; Bank Hapoalim B.M.; Enterprise Bank & Trust; First Internet Bank of Indiana; SMBC MANUBANK; Associated Bank, N.A.; Bridgewater Bank; Simmons Bank; Bank of Hope; Bremer Bank, N.A.; Umpqua Bank; and East West Bank.

16.     RBC CM and the Program Banks worked together to set the interest rates and interest rate tiers, or "segments" offered to IDP customers. As the IDP terms and conditions explained, "RBC CM and the Program Banks reserve the right to change the methodology used to determine the interest rates and Interest Rate Segments in their discretion and without prior notice, which, from time to time, could result in there being no difference between the interest rates for the different Interest Rate Segments."[1]

17.     The IDP governing documents (discussed below) provided that RBC CM was the agent of RBC customers in the IDP:

---

[1]     RBC Capital Markets, LLC, *RBC Insured Deposits Terms and Conditions*, at 8 (Mar. 2025), https://www.rbcwealthmanagement.com/assets/wp-content/uploads/documents/legal/RBC-insured-deposits-summary-of-terms-and-conditions.pdf ("*Direct Accounts T&C*"); RBC Capital Markets, LLC, *RBC Insured Deposits Terms and Conditions*, at 8 (Mar. 2025), https://www.rbcclearingandcustody.com/wp-content/uploads/cc/rbc-insured-deposits-summary-of-terms-and-conditions.pdf ("*Third-Party Accounts T&C*").

- RBC CM is acting as your exclusive agent and custodian in depositing, withdrawing and transferring funds to and from the Deposit Accounts.[2]

- Under the [IDP], when funds are first available for deposit, RBC CM, as your agent, will establish Deposit Accounts in the order set forth on the Priority List.[3]

- Once your funds in the Deposit Accounts at a Program Bank reach the Deposit Limit, RBC CM, as your agent, will open Deposit Accounts for you at the next Program Bank on your Priority List and place your additional funds in that Program Bank.[4]

**The Types of Accounts and Governing Documents Within the IDP**

18.    Depending on the type of account enrolled in the IDP, customers received their sweep services from either RBC Wealth Management ("RBC WM") or RBC Clearing & Custody ("RBC C&C"), both of which are divisions of RBC CM. RBC WM provided services to direct accounts, which were accounts opened by clients directly with RBC WM ("Direct Accounts"). RBC C&C provided services to introducing broker accounts, which were accounts opened by clients through brokers for which RBC C&C acted as a clearing broker ("Introducing Broker Accounts"), and to investment advisor accounts, which were accounts opened by clients for which RBC C&C provided custody and execution services to the client's third-party investment adviser ("Investment Advisor Accounts," and, together with Introducing Broker Accounts, "Third-Party Accounts").

19.    Both RBC WM and RBC C&C also provided sweep services for retirement accounts, which were designated as either advisory or non-advisory and direct ("Direct Retirement Accounts") or non-direct. RBC WM provided sweep services to Direct Retirement Accounts,

---

[2]    RBC Capital Markets, LLC, *Direct Accounts T&C*, *supra* note 1, at 10.

[3]    *Id.* at 5.

[4]    *Id.*

while RBC C&C provided sweep services to non-direct retirement accounts. All account types described herein were eligible for enrollment in the IDP with the exception of non-direct advisory retirement accounts.

### i. RBC WM

20.    Direct Accounts, *i.e.*, those receiving sweep services from RBC WM (both retirement and non-retirement) were subject to the Client Account Agreement & Disclosures,[5] Advisory Master Services Agreement, Client Relationship Summary, and Brokerage Disclosure Document. Direct Accounts enrolled in various advisory programs were subject to additional documents including the RBC Wealth Management Advisory Programs Disclosure Document and/or the RBC Capital Markets Advisory Programs Disclosure Document.[6] Direct Retirement Accounts were further subject to the Employee Retirement Income Security Act of 1974 ("ERISA") Section 408(b)(2) Service Provider Disclosure (Private Client Group) and Retirement Fiduciary Status Disclosure. Collectively, these agreements/disclosures are the Direct Account agreements ("Direct Account Agreements").

21.    In addition to the Direct Account Agreements, the terms of the IDP for Direct Accounts was set forth or incorporated in the Cash Sweep Program Overview,[7] RBC Insured

---

[5]    RBC Wealth Management, *Client Account Agreement & Disclosures* (Mar. 28, 2025), https://www.rbcwealthmanagement.com/assets/wp-content/uploads/documents/legal/client-account-agreement-disclosures.pdf ("*Direct Accounts Client Agreement*").

[6]    RBC Wealth Management, *RBC Advisory Programs Form ADV, Part 2A* (Mar. 2025), https://www.rbcwealthmanagement.com/assets/wp-content/uploads/documents/legal/rbc-capital-markets-advisory-programs-disclosure-document.pdf ("*Capital Markets Form ADV2A*").

[7]    RBC Wealth Management, *Cash Sweep Program Overview* (Mar. 2025), https://www.rbcwealthmanagement.com/assets/wp-content/uploads/documents/legal/wm-cash-sweep-overview.pdf ("*Direct Accounts Cash Sweep Overview*").

Deposits Terms and Conditions,[8] RBC Insured Deposits Bank List, and RBC Insured Deposits Interest Rates, (collectively, "Direct Accounts Sweep Documents," and, together with Direct Account Agreements, "Direct Program Documents"), which were posted on RBC's public website. The Direct Program Documents were governed by Minnesota state law.

    **ii.**    **RBC C&C**

22.    Third-Party Accounts, *i.e.*, those receiving sweep services from RBC C&C (both retirement and non-retirement) were subject to the Client Account Agreement & Disclosures, Customer Account Agreement & Disclosures, and the Advisory Master Services Agreement. Third-Party Accounts enrolled in various advisory programs were also subject to the RBC Capital Markets Advisory Programs Disclosure Document.[9] Third-Party, or non-direct retirement accounts were further subject to the RBC Clearing & Custody (Advisor Services) ERISA Section 408(b)(2) Service Provider Disclosure and the RBC Clearing & Custody (Correspondent Services) ERISA Section 408(b)(2) Service Provider Disclosure. Collectively, these agreements and disclosures are the Third-Party Account agreements ("Third-Party Account Agreements").

23.    In addition to the Third-Party Account Agreements, the terms of the IDP for Third-Party Accounts was set forth or incorporated in the Cash Sweep Program Overview,[10] RBC Insured Deposits Terms and Conditions[11], RBC Insured Deposits Bank List, and RBC Insured Deposits

---

[8]    RBC Capital Markets, LLC, *Direct Accounts T&C*, *supra* note 1.

[9]    RBC Clearing & Custody, *RBC Advisory Programs Form ADV, Part 2A* (Mar. 28, 2025), https://www.rbcwealthmanagement.com/assets/wp-content/uploads/documents/legal/rbc-capital-markets-advisory-programs-disclosure-document.pdf ("*Third-Party Accounts Form ADV2A*").

[10]    RBC Wealth Management, *Cash Sweep Program Overview* (Mar. 2025), https://www.rbcwealthmanagement.com/assets/wp-content/uploads/documents/legal/wm-cash-sweep-overview.pdf ("*Third-Party Accounts Cash Sweep Overview*").

[11]    RBC Capital Markets, LLC, *Third-Party Accounts T&C*, *supra* note 1.

Interest Rates (together with Third-Party Account Agreements, "Third-Party Program Documents").

24.    Together, the Direct Program Documents and the Third-Party Program Documents made up the governing agreements and disclosures for all account types within the IDP ("IDP Program Documents"), which were posted on RBC's public websites.

**Defendants Reaped Significant Benefits from the IDP at the Expense of Customers Who Were Paid Unreasonably Low Interest Rates**

25.    The IDP provided several highly lucrative financial benefits to Defendants due to fees that the Program Banks paid to RBC based on the number of Deposit Accounts and the amount of customer cash swept by RBC into the Deposit Accounts. With respect to the IDP, RBC stated:

- Each Program Bank, except RBC Affiliate Banks, will pay RBC CM a fee determined by RBC CM equal to a percentage of the average daily deposit balance in the Deposit Accounts at the Program Bank. The fee paid to RBC CM will range between 0% and Federal Funds Effective Rate plus 75 basis points (0.75%) annually based on the Program Bank.[12]

- In the case of the RBC Affiliate Banks, RBC CM will receive a fee per [a]ccount of $20.00 annually.[13]

- In addition to the fees RBC CM receives from the Program Banks, RBC CM will receive other compensation from the RBC Affiliate Banks that is reflected by internal allocations made for reporting purposes.[14]

---

[12]   RBC Capital Markets, LLC, *Direct Accounts T&C*, *supra* note 1, at 10; RBC Capital Markets, LLC, *Third-Party Accounts T&C*, *supra* note 1, at 10.

[13]   RBC Capital Markets, LLC, *Direct Accounts T&C*, *supra* note 1, at 10-11; RBC Capital Markets, LLC, *Third-Party Accounts T&C*, *supra* note 1, at 10-11.

[14]   RBC Capital Markets, LLC, *Direct Accounts T&C*, *supra* note 1, at 11; RBC Capital Markets, LLC, *Third-Party Accounts T&C*, *supra* note 1, at 11.

26.     RBC also acknowledged that it and the RBC Affiliate Banks "receive financial benefits in connection with the [IDP] Program[,]"[15] therefore creating a conflict of interest. Through the IDP, "the RBC Affiliate Banks will receive a stable source of deposits at a cost that may be less than other alternative funding sources available to them."[16] The RBC Affiliate Banks then "use deposits in the Deposit Accounts to fund investments or other bank assets[,]"[17] which generate profit "measured by the difference, or 'spread,' between the interest rate paid on the Deposit Accounts, fees paid to RBC CM, and other costs of maintaining the Deposit Accounts, and the interest rate and other income earned on those investments and assets funded by the funds in the Deposit Accounts."[18] In particular, "[b]y being designated as the Primary Excess Bank, CNB [City National Bank] [an RBC Affiliate Bank] will receive substantial additional deposits to use in its business to increase its profitability."[19]

27.     RBC further explained that, while the fees paid by the Program Banks were an important revenue stream for RBC, they had the effect of reducing the interest paid to customers in the IDP: "You do not pay these fees directly to RBC CM, but the amount of fees received by RBC CM will affect the interest rate you earn on your deposits."[20]

---

[15]  *Id.*

[16]  *Id.*

[17]  *Id.*

[18]  *Id.*

[19]  *Id.*

[20]  *Id.*

28.    Indeed, as of December 31, 2024, the two RBC Affiliate Banks, City National Bank and RBC Bank (Georgia), N.A., held $9.4 billion and $4.0 billion, respectively, in fully insured affiliate sweep deposits.[21]

29.    RBC CM similarly recognizes the inherent "conflict of interest" that exists with its financial advisors in connection with the IDP due to "bonus opportunities [being] based on meeting benchmarks for revenue collectively generated by him/her[.]"[22] "These bonuses create a conflict of interest because they provide supervisors an incentive to recommend and influence Financial Professionals to recommend products, services and investments that generate greater revenue in order to meet those benchmarks[,]"[23] including the IDP. RBC CM further admits that "[y]ou may receive higher rates by investing directly in money market funds or cash alternatives outside of the Cash Sweep Program[.]"[24]

30.    Due to these adverse financial incentives, Defendants failed to negotiate and secure reasonable sweep interest rates for customers in the IDP. As defined in the Oxford English Dictionary, the term "reasonable" is synonymous with "fair" and "equitable."

---

[21]    Federal Financial Institutions Examination Council, *Consolidated Reports of Condition and Income for a Bank with Domestic and Foreign Offices – FFIEC 031*, at 31  (Jan. 30, 2025), City National                                                                                                         Bank, https://cdr.ffiec.gov/Public/ViewFacsimileDirect.aspx?ds=call&idtype=id_rssd&id=63069&date=12312024; Federal Financial Institutions Examination Council, *Consolidated Reports of Condition and Income for a Bank with Domestic Offices Only*, at 27; RBC Bank (Georgia), National                  Association                  (Jan.                  30,                  2025), https://cdr.ffiec.gov/Public/ViewFacsimileDirect.aspx?ds=call&idtype=id_rssd&id=3783948&date=12312024.

[22]    RBC Capital Markets, LLC, *Direct Accounts T&C*, *supra* note 1, at 11; RBC Capital Markets, LLC, *Third-Party Accounts T&C*, *supra* note 1, at 11.

[23]    *Id.*

[24]    RBC Wealth Management, *Direct Accounts Cash Sweep Overview*, *supra* note 7, at 6; RBC Clearing & Custody, *Third-Party Accounts Cash Sweep Overview*, *supra* note 10, at 5.

31.    "Fair market value" ordinarily represents "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction."[25]

32.    The Organization for Economic Co-Operation and Development ("OECD") guidance for financial transactions states that "in applying the arm's length principal to a financial transaction it is necessary to consider the conditions that independent parties would have agreed to in comparable circumstances."[26]

33.    Accordingly, the United States Department of Labor defines a "reasonable" rate of interest as "a rate of interest determinable by reference to short-term rates available to other customers of the bank, those offered by other banks, those available from money market funds, those applicable to short-term instruments such as repurchase agreements, or by reference to a benchmark such as sovereign short-term debt (*e.g.*, in the U.S., treasury bills), all in the jurisdiction where the rate is being evaluated."[27]

34.    Similarly, the Internal Revenue Service defines an "arm's length interest rate" as "a rate of interest which was charged, or would have been charged, at the time the indebtedness arose, in independent transactions with or between unrelated parties under similar circumstances."[28]

35.    Consistent with these common sense definitions, a reasonable sweep rate is one that takes into account market rates for similar (albeit not identical) products in arm's-length

---

[25]  *Value, fair market value*, Black's Law Dictionary (12th ed. 2024).

[26]  OECD, *Transfer Pricing Guidance on Financial Transactions: Inclusive Framework on BEPS: Actions*, 4, 8-10, 10.18 – 10.19, https://perma.cc/TNY9-9GK2 (last visited May 28, 2025).

[27]  Grant of Individual Exemptions; Deutsche Bank AG, 68 Fed. Reg. 34646 (June 10, 2003).

[28]  26 C.F.R. §1.482-2(a)(2).

transactions, rates applicable to short-term instruments like repurchase agreements, and other short-term benchmark rates, including the federal funds rate and U.S. Treasury Bills.

36.    Eric Edstrom, director of cash management at RBC Wealth Management-US acknowledged that "[o]ne of the major pain-points investors have with cash is being at the mercy of the current interest rate environment[,]" while further stating "[s]hort-term interest rates (are) what drives yields on cash, so it's all about maximizing what you're earning on your cash within the current interest rate environment without taking on too much risk[.]"[29]

37.    By a variety of objective measures, RBC CM paid unreasonably low rates under the IDP. For example, between 2020-2021, the interest rate across all segments in the IDP was nearly zero at 0.01%. However, the average federal funds effective rate was 0.37% in 2020 and 0.08% in 2021 – *37 times higher* than the IDP's rate in 2020 and *8 times higher* than the IDP's rate in 2021, respectively.[30] And, while the effective federal funds rate increased dramatically from nearly zero in 2022 to as much as 5.33% in 2023, the highest in nearly two decades, rates within the IDP remained under 1% for individuals with less than $250,000 in cash deposits. Speaking on that period of rising rates, Doug Guzman, RBC group head of wealth management and insurance told analysts that he and other executives thought, "the right balance was to allocate some of that rising rate to our customers."[31] Yet, over the last two years, as Defendants' competitors began

---

[29]    RBC Wealth Management, Your finances, *The case for cash: How much do I really need for a healthy portfolio*, https://www.rbcwealthmanagement.com/en-us/insights/the-case-for-cash-how-much-do-i-really-need-for-a-healthy-portfolio (last visited May 28, 2025).

[30]    Federal Reserve Bank of St. Louis, *Federal Funds Effective Rate, Annual*, https://fred.stlouisfed.org/graph/?id=RIFSPFFNA (last visited May 28, 2025).

[31]    Dan Shaw, Financial Planning, *Unlike its competitors, RBC has no plans to change 'sweeps' rates* (August 28, 2024), https://www.financial-planning.com/news/unlike-morgan-stanley-ubs-and-wells-fargo-rbc-has-no-plans-to-raise-its-sweeps-rates.

raising their yields on certain sweep accounts, Defendants drastically cut IDP interest rates by over 80% for its lowest tiered IDP customers. This is in stark contrast to "RBC's plan to hold steady on its sweeps rates[,]"[32] as of August 2024. In fact, by November 2024, less than three months after making that statement, IDP rates dropped by more than 60% for those with less than $250,000 in cash deposits despite the effective federal funds rate decreasing by less than 16% during the same time period.[33] Still today, the federal funds effective rate remains around 4.33%. Meanwhile, the current IDP rates are as low as 0.15% depending on the customer's account type and IDP cash balance.[34]

38.    The following chart lists the rates paid under the IDP to Third-Party Accounts through RBC C&C across all asset segments from 2020-2025:

| Deposit Balance | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| (Managed Accounts) | | | | | | |
| $5M+ | 0.01% | 0.01% | 0.01%-2.50% | 2.50%-5.12% | 4.13%-5.12% | 3.82%-4.13% |
| $2M to $4.99M | 0.01% | 0.01% | 0.01%-2.50% | 2.50%-3.56% | 2.58%-3.56% | 2.27%-2.58% |
| $1M to $1.99M | 0.01% | 0.01% | 0.01%-1.90% | 1.90%-2.53% | 1.76%-2.53% | 1.51%-1.76%- |

---

[32]  *Id.*

[33]  Federal Reserve Bank of St. Louis, *Federal Funds Effective Rate, Monthly*, https://fred.stlouisfed.org/series/FEDFUNDS (last visited May 28, 2025).

[34]  Currently, for Direct Accounts with less than $10 million in household assets, RBC pays 0.25% for account balances between $0 and $249,999; 0.40% for account balances between $250,000 and $499,999; 0.50% for account balances between $500,000 and $999,999; 1.51% for account balances between $1 million and $1.99 million; 2.53% for account balances between $2 million and $4.99 million; and 3.76% for account balances at $5 million and above. For Direct Accounts with more than $10 million in household assets, RBC pays 4.07% for account balances between $0 and $4.99 million and 3.82% for account balances at $5 million and above. For Third-Party Accounts, RBC pays 0.15% for account balances between $0 and $100,000; 0.20% for account balances between $100,000 and $249,999; 0.25% for account balances between $250,000 and $499,999; 0.50% for account balances between $500,000 and $999,999; 1.51% for account balances between $1 million and $1.99 million; 2.27% for account balances between $2 million and $4.99 million; and 3.82% for account balances at $5 million and above.

| | | | | | | |
|---|---|---|---|---|---|---|
| $500,000 to $999,999 | 0.01% | 0.01% | 0.01%- 1.45% | 1.45%- 1.51% | 0.75%- 1.51% | 0.50%- 0.75% |
| $250,000 to $499,999 | 0.01% | 0.01% | 0.01%- 1.10% | 1.10%- 1.11% | 0.50%- 1.11% | 0.25%- 0.50% |
| $100,000 to $249,999 | 0.01% | 0.01% | 0.01%- 0.90% | 0.90% | 0.35%- 0.90% | 0.20%- 0.35%- |
| $0 to $100,000 | 0.01% | 0.01% | 0.01%- 0.85% | 0.85% | 0.30%- 0.85% | 0.15%- 0.30%- |

39. As explained in further detail below, the rates paid under the IDP have been, and remain, significantly below several objective benchmarks of reasonableness, including, by way of example, federal benchmark rates, competitors' rates on other interest-bearing accounts, rates on RBC CM's other interest-bearing products, and rates paid by other sweep programs.

**A.    Federal Benchmark Rates**

40. The rates paid under the IDP consistently have been, and remain, unreasonably low relative to federal benchmark rates.

41. Federal benchmark interest rates, including the federal funds target rate, are an appropriate point of comparison for the reasonableness of Defendants' interest rates. Indeed, as the Board of Governors of the Federal Reserve System explains on its website, "[c]hanges in the target range for the federal funds rate influence short-term interest rates for other financial instruments."[35]

42. Despite precipitous increases in the target range for the federal funds rate over the last several years, the rates paid under the IDP barely changed. For instance, between January 2022 and August 2023, the Federal Reserve increased the federal funds target range 11 separate times,

---

[35] Board of Governors of the Federal Reserve System, *Economy at a Glance – Policy Rate* (May 7, 2025), https://www.federalreserve.gov/economy-at-a-glance-policy-rate.htm#:~:text=affect%20the%20economy%3F-,Changes%20in%20the%20target%20range%20for%20the%20federal%20funds%20rate,activity%2C%20employment%2C%20and%20inflation.

culminating at a target range of 5.25% to 5.50%, the highest in nearly two decades. Yet, during that same period, the rates paid under the IDP only marginally increased from 0.01% to 0.85% for Third-Party Account customers with less than $100,000 in total brokerage assets and from 0.01% to 0.90% for Third-Party Account customers with more than $100,000 but less than $250,000 in total brokerage assets. Likewise, Between April 2020 and May 2022, the federal funds effective rate increased from .05% to .77%, representing a 1440% increase. Meanwhile, during the same period, the rates under the IDP for Third-Party Accounts remained stagnant at a paltry 0.01% across all asset segments.

43.    The following graph depicts the rates paid under the IDP for Third-Party Accounts and the average monthly federal funds effective rate from January 2022 through April 2025:



44.    As depicted above, the sharp increase in the federal funds effective rate in 2022 and 2023 produced little to no increases to the rates paid under the IDP to Third-Party Accounts with total asset balances under $1 million. For purposes of illustration, the chart below reflects the federal funds effective rate beginning in 2017:

*Federal Funds Effective Rate (2017 to present)*



45.    By comparison, short-term interest rates for other federal financial instruments, including U.S. Treasury Bills, experienced steep rate increases in 2022 and 2023, as the Federal Reserve hiked the federal funds rate. For purposes of illustration, the following charts depict the three-month and one-year U.S. Treasury Bill rates between 2017 and today:

*Three-Month Treasury Bill Rates (2017 to Present)*



*One-Year Treasury Bill Rates (2017 to Present)*



46.     The overnight interest rate at which the U.S. Federal Reserve repurchases securities from private banks (the "repo" rate), currently at 4.33%, similarly increased together with the federal funds rate beginning in 2022. For purposes of illustration, the following chart depicts the repo rates between 2017 and today:

*Overnight Repo Rates (2017 to Present)*



47.     As depicted above, like other short-term interest rate benchmarks, the repo rate increased alongside the federal funds rate beginning in 2022.

**B.      Rates Paid by Competitors' Interest-Bearing Deposit Accounts**

48.      The rates paid under the IDP have also been significantly lower than rates paid by interest-bearing deposit accounts at other institutions.

49.      Informa Research Services ("Informa"), which compiles data on interest rates paid by U.S. banks on various deposit accounts, has published data showing that the interest rates for 50 of the largest FDIC-insured banks in the United States correlate with the federal funds rate, unlike the sweep rates paid under the IDP.

50.      Significantly, Informa's data shows that interest rates for online money market deposit accounts from 2022 to the present have been substantially higher than the rates Defendants paid to Plaintiff and Class Members. According to this data, unlike the rates paid by Defendants under the IDP, the rates paid by online banks reflected changes in the federal funds rate.

51.      The following is a summary of the data made available by Informa for the period January 2022 through November 2023 for deposits in excess of $50,000 for all national banks, the top 50 national banks, and 74 prominent online banks:

| Date | All Natl Avg APY | Top 50 Avg APY | Internet Avg APY | Fed Rate |
|---|---|---|---|---|
| 7-Jan-22 | 0.10 | 0.08 | 0.24 | 0.08 |
| 4-Feb-22 | 0.10 | 0.08 | 0.25 | 0.08 |
| 4-Mar-22 | 0.10 | 0.08 | 0.26 | 0.08 |
| 1-Apr-22 | 0.10 | 0.08 | 0.26 | 0.33 |
| 6-May-22 | 0.10 | 0.09 | 0.28 | 0.83 |
| 3-Jun-22 | 0.11 | 0.10 | 0.34 | 0.83 |
| 1-Jul-22 | 0.13 | 0.15 | 0.45 | 1.58 |
| 5-Aug-22 | 0.16 | 0.22 | 0.62 | 2.33 |
| 2-Sep-22 | 0.19 | 0.26 | 0.72 | 2.33 |
| 7-Oct-22 | 0.27 | 0.38 | 0.89 | 3.08 |
| 4-Nov-22 | 0.31 | 0.44 | 1.06 | 3.83 |
| 2-Dec-22 | 0.40 | 0.59 | 1.26 | 3.83 |
| 6-Jan-23 | 0.49 | 0.73 | 1.43 | 4.33 |
| 3-Feb-23 | 0.52 | 0.78 | 1.55 | 4.58 |
| 3-Mar-23 | 0.56 | 0.78 | 1.61 | 4.57 |
| 7-Apr-23 | 0.61 | 0.83 | 1.68 | 4.83 |
| 5-May-23 | 0.65 | 0.86 | 1.72 | 5.08 |

| | | | | |
|---|---|---|---|---|
| 2-Jun-23 | 0.69 | 0.93 | 1.79 | 5.08 |
| 7-Jul-23 | 0.71 | 0.95 | 1.83 | 5.08 |
| 4-Aug-23 | 0.74 | 0.99 | 1.88 | 5.33 |
| 01-Sep-23 | 0.74 | 1.00 | 1.92 | 5.33 |
| 06-Oct-23 | 0.76 | 1.01 | 1.99 | 5.33 |
| 03-Nov-23 | 0.78 | 1.04 | 1.95 | 5.33 |

52.    As shown above, as the Federal Reserve increased the federal funds target range throughout 2022 and 2023, average rates offered for deposits in excess of $50,000 increased across the board. Meanwhile, during the same period, the rates paid to customers in segments 1 and 2 (IDP balances less than $250,000) remained under 1%, increasing only marginally from 0.01% to 0.85% and 0.90%, respectively.

53.    National averages for deposits in excess of $10,000 similarly exceeded rates offered under the IDP between January 2022 and November 2023. The following is a summary of the data made available by Informa for the period January 2022 through November 2023 for the average rate on deposits in excess of $10,000 for the same group of banks:

| Date | All Natl Avg APY | Top 50 Avg APY | Internet Avg APY | Fed Rate |
|---|---|---|---|---|
| 7-Jan-22 | 0.07 | 0.07 | 0.22 | 0.08 |
| 4-Feb-22 | 0.07 | 0.07 | 0.22 | 0.08 |
| 4-Mar-22 | 0.07 | 0.07 | 0.23 | 0.08 |
| 1-Apr-22 | 0.07 | 0.08 | 0.24 | 0.33 |
| 6-May-22 | 0.08 | 0.08 | 0.26 | 0.83 |
| 3-Jun-22 | 0.08 | 0.10 | 0.32 | 0.83 |
| 1-Jul-22 | 0.10 | 0.15 | 0.41 | 1.58 |
| 5-Aug-22 | 0.12 | 0.21 | 0.56 | 2.33 |
| 2-Sep-22 | 0.14 | 0.25 | 0.66 | 2.33 |
| 7-Oct-22 | 0.20 | 0.35 | 0.77 | 3.08 |
| 4-Nov-22 | 0.24 | 0.41 | 0.94 | 3.83 |
| 2-Dec-22 | 0.31 | 0.53 | 1.07 | 3.83 |
| 6-Jan-23 | 0.37 | 0.61 | 1.21 | 4.33 |
| 3-Feb-23 | 0.39 | 0.66 | 1.27 | 4.58 |
| 3-Mar-23 | 0.43 | 0.67 | 1.35 | 4.57 |
| 7-Apr-23 | 0.46 | 0.72 | 1.40 | 4.83 |
| 5-May-23 | 0.49 | 0.74 | 1.43 | 5.08 |
| 2-Jun-23 | 0.51 | 0.78 | 1.49 | 5.08 |

- 20 -

| 7-Jul-23 | 0.53 | 0.80 | 1.52 | 5.08 |
| 4-Aug-23 | 0.55 | 0.85 | 1.56 | 5.33 |
| 01-Sep-23 | 0.56 | 0.86 | 1.59 | 5.33 |
| 06-Oct-23 | 0.58 | 0.91 | 1.60 | 5.33 |
| 03-Nov-23 | 0.59 | 0.92 | 1.59 | 5.33 |

54.     Like the average rates for deposits in excess of $50,000, these rates increased as the Federal Reserve increased the federal funds rate. Meanwhile, for all Third-Party Account customers with less than $250,000 in IDP balances, RBC CM kept rates under 1%.

**C.     Rates Paid by Defendants' Other Interest-Bearing Accounts**

55.     The interest rates paid by the IDP were also far lower than the interest rates paid by other products offered by Defendants outside of the IDP. Rates on Defendants' other interest-bearing deposit accounts are an appropriate comparator for determining a reasonable sweep-program interest rate because (a) the deposit accounts are offered by some of the same Program Banks as the IDP, including RBC Affiliate Banks; and (b) RBC CM acts as agent and receives compensation in connection with the other interest-bearing products.

56.     RBC CM offers competitive rates to brokerage customers on other products outside of the IDP. For example, RBC CM offers the RBC Premium Savings program to certain non-retirement account holders. When an eligible customer enrolls in RBC Premium Savings, RBC CM – acting as agent for the customer – moves the cash from the customer's brokerage account into a deposit account at certain banks within IntraFi LLC's deposit network. After RBC CM makes the initial deposit, RBC Premium Savings customers earn interest on the cash unless and until they withdraw all the funds. In exchange, RBC CM earns fees from the participating banks in the program.

57.     In other words, RBC Premium Savings and the IDP operate in similar fashion and present the same conflict of interest for RBC CM: a lower rate benefits RBC CM and its affiliates.

- 21 -

Nevertheless, customers earned (and still earn) far higher interest from RBC Premium Savings than the IDP. RBC Premium Savings currently pays customers 4.23% while the IDP pays customers with balances under $1 million between 0.15% and 0.50% for Third-Party Accounts and Direct Accounts, respectively.

**D.    Rates Paid by Competitors' Cash Sweep Programs**

58.    The rates paid under the IDP have also remained substantially lower than the rates paid by competitors' sweep programs.

59.    For example, Fidelity Investments ("Fidelity") and R.W. Baird pay a substantially higher rate on swept cash than Defendants. Fidelity paid investors, starting in August 2023, as much as 2.72% APY on swept cash, and R.W. Baird paid investors (as of September 8, 2023) 2.07% to 4.15% on swept cash, depending on cash balances.

60.    Likewise, Interactive Brokers LLC ("Interactive Brokers"), Webull Financial LLC ("Webull"), and The Vanguard Group ("Vanguard") each sweep cash and offer substantially higher rates than Defendants: Interactive Brokers pays up to 4.83% on swept cash, Webull pays 5%, and Vanguard pays 3.7% on sweeps to FDIC-insured deposit accounts.

61.    Further demonstrating the unreasonableness of the sweep rates, many of the Program Banks participated as program banks in sweep programs offered by Defendants' competitors and paid competitors' customers far higher rates of interest. For example, six of the Program Banks are program banks for Vanguard's sweep program, which currently pays 3.65% interest on customer cash deposits[36] and seven Program Banks are program banks for one of Fidelity's cash sweep programs, which (as stated above) currently pays 2.19% interest on customer

---

[36]    The six Program Banks are American Express National Bank; Bank of Baroda; Citibank, N.A.; HSBC Bank USA, N.A.; Synovus Financial Corp.; and Truist Bank.

cash deposits.[37] Likewise, 25 Program Banks (*or over 80% of Program Banks*) are part of IntraFi LLC's deposit network, which provides program banks for both R.W. Baird's cash sweep program and RBC's Premium Savings program, which (as stated above) currently pay between 1.45% and 2.89% (R.W. Baird), and 4.23% (RBC Premium Savings), respectively.[38] Meanwhile, the Program Banks pay RBC CM's own customers meager rates of interest as low as 0.15% under the IDP.

62.     Likewise, City National Bank, an RBC Affiliate Bank and the Primary Excess Bank for Excess Funds held in the IDP, has its own cash sweep program that earns customers *over 23.5 times more* interest than IDP customers whose cash is swept to the same deposit accounts held at City National Bank ("City National Bank Deposit Sweep Program"). The City National Bank Deposit Sweep Program currently pays its own sweep customers 3.53% interest across all asset tiers (with a program limit of $25,000,000).[39] Highlighting the inequality and disparate treatment RBC customers receive within the IDP, 12 Program Banks also participate as program banks within the City National Bank Deposit Sweep Program. In other words, two individuals participating in the IDP and City National Bank Deposit Sweep Program, respectively, will earn drastically different interest rates on the same amount of cash being swept to the same institutions

[37] The seven Program Banks are Citibank, N.A.; HSBC Bank USA, N.A.; UMB Bank, n.a.; Associated Bank, N.A.; The Bank of New York Mellon Corporation; U.S. Bank, N.A.; and Truist Bank.

[38] The 25 Program Banks are Citibank, N.A.; U.S. Bank, N.A.; American Express National Bank; Truist Bank; UMB Bank, n.a.; State Street Bank and Trust Company; The Bank of New York Mellon Corporation; M&T Bank Corporation; Bank of Baroda; Israel Discount Bank of New York; Union Bank & Trust Company; BankUnited, N.A.; EagleBank; Atlantic Union Bank; Synovus Financial Corp.; TriState Capital Bank; Bank Hapoalim B.M.; Enterprise Bank & Trust; First Internet Bank of Indiana; Associated Bank, N.A.; Bridgewater Bank; Simmons Bank; Bank of Hope; Bremer Bank, N.A.; and East West Bank.

[39] City National Bank, *City National Bank Deposit Sweep Program*, https://www.cnb.com/content/dam/cnb/business-banking/accounts/savings/business-savings/documents/City-National-Bank-Deposit-Sweep-Program.pdf (last visited May 28, 2025).

in the same deposit accounts for no other reason other than they decided to open an account with RBC CM versus City National Bank (an RBC Affiliate Bank).

63.    The disparity between these benchmarks, individually and collectively, and the rates paid under the IDP, show that the rates were unreasonable. While Defendants and their competitors all take discretionary fees in connection with their sweep programs, Defendants' fees, which "affect the interest rate you earn on your deposits[,]" are plainly unreasonable based on the trivial interest rates passed down to their customers. As a result, Plaintiff and the Class (defined below) suffered damages by receiving far lower interest payments than they would have received if the IDP interest rates and discretionary fees were reasonable.

**Defendants Breached Their Contractual Obligations Related to the IDP**

64.    RBC CM breached several express contractual obligations to act in their customers' best interests through its payment of unreasonably low rates of interest throughout the operation of the IDP.

65.    Under the IDP Program Documents, RBC CM agreed to act as its customers' agent in connection with the IDP ("RBC CM is acting as your exclusive agent and custodian in depositing, withdrawing and transferring funds to and from the Deposit Accounts.").[40] As the agent, RBC CM exercised discretion and control over cash deposited into the IDP, selected the Program Banks, coordinated with the Program Banks to set interest rates, swept customers' cash into the Program Banks, and unilaterally decided the fees it wanted to extract from the interest accrued on the Deposit Accounts ("all transactions with respect to your Deposit Accounts must be

---

[40]    RBC Capital Markets, LLC, *Direct Accounts T&C*, *supra* note 1, at 10; RBC Capital Markets, LLC, *Third-Party Accounts T&C*, *supra* note 1, at 10.

directed by RBC CM and all information concerning your Deposit Accounts can only be obtained from RBC CM.").[41]

66.     RBC CM, as agent under the IDP Program Documents, had duties of care and loyalty and was contractually obligated to act in its customers' best interests in paying customers reasonable interest rates under the IDP and extracting reasonable fees from the interest accrued on the Deposit Accounts. In other words, reasonableness was implicit in the IDP Program Documents and governed the sweep interest rates and fees paid under the IDP. Defendants breached these contractual duties through its operation of the IDP by failing to pay reasonable sweep interest rates to customers and extracting unreasonable fees for themselves out of the interest accrued on customers' Deposit Accounts, thereby enriching themselves at the expense of their customers.

67.     RBC CM also owed all customers in the IDP contractual duties under the implied covenant of good faith and fair dealing, which precluded RBC CM from frustrating and unfairly interfering with its customers' right to receive the benefits of the contract. RBC CM violated these duties when it acted in bad faith and abused its discretion by paying customers unreasonable sweep interest rates that were well below several objective benchmarks, including the federal funds rate (which rose dramatically as the sweep interest rates essentially remained the same) and competitors' rates, and by extracting unreasonable fees from the sweep interest accrued on customers' Deposit Accounts.

**Defendants Breached Their Fiduciary Duties Related to the IDP**

68.     In addition to violating their contractual obligations, Defendants breached their fiduciary duties related to the IDP. RBC CM acted as an agent in connection with the IDP because it accepted special compensation in exchange for the exercise of managerial discretion over cash

---

[41]    *Id.*

deposits in the IDP. RBC CM exercised full managerial discretion over customer cash, including by unilaterally choosing the participating Program Banks, sweeping cash deposited by customers into the Deposit Accounts, setting interest rate tiers based on the amounts deposited and coordinating with the Program Banks to set and reset the interest rates paid on customer deposits in the IDP, and extracting fees from the interest accrued on the Deposit Accounts.

69.    As its customers' agent in connection with the IDP, RBC CM owed fiduciary duties under New York law and under Regulation Best Interest, 17 C.F.R. §240.15l-1, which required it to act in its retail customers' best interests and prohibited it from placing its own interests ahead of its retail customers' interests.[42]    RBC CM also had the obligation to consider reasonably available alternatives as part of determining whether recommending a given product to investors was appropriate.[43]

70.    Consistent with these fiduciary duties, the IDP Program Documents stated that for advisory accounts RBC CM "ha[s] an affirmative duty to always act in the best interest of our advisory clients which means their interests must always come first. This means that when acting in an investment advisory capacity, [RBC CM is] responsible to: (i) put client interests before their own; (ii) act with utmost good faith; (iii) provide full and fair disclosure of all material facts; (iv)

---

[42]    *See* U.S. Securities and Exchange Commission, Regulation Best Interest: The Broker-Dealer Standard of Conduct, 84 Fed. Reg. 33318, 33320 (July 12, 2019) (codified at 17 C.F.R. §240.15l-1).

[43]    U.S. Securities and Exchange Commission, *Staff Bulletin:  Standards of Conduct for Broker-Dealers    and    Investment    Advisers    Care    Obligations*    (April    30,    2023), https://www.sec.gov/about/divisions-offices/division-trading-markets/broker-dealers/staff-bulletin-standards-conduct-broker-dealers-investment-advisers-care-obligations.

not mislead clients; and (v) disclose all potential, perceived, and/or actual conflicts of interest to clients."[44]

71.     However, as discussed above, RBC CM violated these fiduciary duties under New York law and Regulation Best Interest by failing to act in its customers' best interests, and by placing its own interests ahead of its customers' interests, when it enriched Defendants and their RBC Affiliate Banks by providing customers in the IDP with unreasonably low interest rates that were well below several objective benchmarks discussed above, and by paying itself unreasonable fees extracted from the interest accrued on customers' Deposit Accounts.

**Defendants Made Material Misrepresentations and Omissions Regarding the IDP**

72.     In the IDP Program Documents, Defendants made material omissions by failing to disclose that, as discussed above, Defendants established and used the IDP to enrich themselves and the Program Banks by paying unreasonably low interest rates to customers to increase the financial benefits to themselves and the RBC Affiliate Banks and by extracting unreasonable fees from interest accrued on customers' Deposit Accounts.

73.     Both the Direct Accounts Client Agreement and the Third-Party Accounts Client Agreement misleadingly stated that "[t]he interest rates, if any, you receive on your funds in the Deposit Accounts **may be higher or lower** than the interest rates available on other deposit accounts offered by a Program Bank or on deposit accounts offered by other depository institutions in comparable accounts or on any money market funds[]"[45] and "[y]ou **may** receive higher rates

---

[44]    RBC Wealth Management, *Capital Markets Form ADV2A*, *supra* note 6, at 35; RBC Clearing & Custody, *Third-Party Accounts Form ADV2A*, *supra* note 9, at 35.

[45]    RBC Capital Markets, LLC, *Direct Accounts T&C*, *supra* note 1, at 8 (incorporated in the Direct Accounts Client Agreement at 38); RBC Capital Markets, LLC, *Third-Party Accounts T&C*, *supra* note 1, at 8 (incorporated in the Third-Party Accounts Client Agreement at 40).

by investing directly in money market funds or cash alternatives outside of the Cash Sweep Program[.]"[46] These statements were misleading and omitted material facts because, in reality, interest rates in the IDP were *always* significantly below market alternatives, as Defendants knew (*i.e.*, the payment of below-market interest rates was not a mere possibility that "may" occur).

74.    Defendants also falsely claimed that "[t]his program [IDP] makes it easy" for customers "to enjoy" among other things, the "advantage[]" to "[e]arn competitive interest rates."[47] This statement was misleading omitted material facts because, in reality, interest rates in the IDP were not competitive compared to several objective benchmarks such as the federal funds rate or RBC CM's competitors' sweep program rates as discussed above and as Defendants knew. *See* sections A-D, *supra*.

75.    Moreover, Defendants' statements about potentially *lower* interest rates did not excuse their contractual and fiduciary obligations to pay *reasonable* market interest rates, as described above. These statements must be construed harmoniously with Defendants' contractual and fiduciary obligations.

## CLASS ACTION ALLEGATIONS

76.    Plaintiff brings this action against Defendants as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of all customers of Defendants who had cash deposits or balances in the IDP ("Class"). Excluded from the Class are

---

[46]  RBC Wealth Management, *Direct Accounts Cash Sweep Overview*, *supra* note 7, at 6 (incorporated in the Direct Accounts Client Agreement); RBC Clearing & Custody, *Third-Party Accounts Cash Sweep Overview*, *supra* note 10, at 5 (incorporated in the Third-Party Accounts Client Agreement).

[47]  RBC    Clearing    &    Custody,    *Cash    management    and    sweep    options*, https://www.rbcclearingandcustody.com/en-us/products-and-services/cash-management/ (last visited May 28, 2025).

Defendants, officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

77.    The Class members are so numerous that their individual joinder is impracticable. While the exact number of Class members can only be determined by appropriate discovery, Plaintiff believes that Class members number in the thousands and are geographically dispersed because RBC oversees approximately $945 billion in client assets worldwide.

78.    Plaintiff's claims are typical of Class members' claims because Plaintiff's cash deposits were subject to IDP, and, therefore, Plaintiff's claims, and those of all other Class members, arose from the same wrongful conduct by Defendants alleged herein.

79.    Plaintiff will fairly and adequately protect the interests of the Class members and has retained counsel experienced and competent in complex class action litigation. Plaintiff has no interests that are contrary to, or in conflict with, the members of the Class that Plaintiff seeks to represent.

80.    The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class or a risk of adjudications that, as a practical matter, would be dispositive of the interests of other Class members who were not parties to the adjudications or would substantially impair or impede the ability of such Class members to protect their interests.

81.    Because Defendants act or refuse to act on grounds that apply generally to the Class, final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

82.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

83.     Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members in that Defendants act on grounds generally applicable to the entire Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants violated the laws as alleged herein;

(b)     whether Defendants owed fiduciary duties to Plaintiff and members of the Class in connection with the IDP;

(c)     whether Defendants breached their fiduciary duties to Plaintiff and members of the Class in connection with the IDP;

(d)     whether Defendants breached their contractual obligations to Plaintiff and members of the Class in connection with the IDP;

(e)     whether Defendants made material misrepresentations and/or omissions in connection with the IDP;

(f)     whether Defendants were unjustly enriched by their wrongful conduct;

(g)     whether the members of the Class sustained damages as a result of the alleged wrongful conduct by Defendants, and, if so, the appropriate measure of damages; and

(h)     whether the members of the Class are entitled to attorneys' fees and costs and, if so, the appropriate amount of attorneys' fees and costs.

COUNT I

**BREACH OF FIDUCIARY DUTY
AGAINST ALL DEFENDANTS**

84.     Plaintiff incorporates paragraphs 10-71 as though fully set forth herein.

85.     RBC CM was the agent of customers enrolled in the IDP, including Plaintiff and the Class. Royal Bank owned and controlled RBC CM.

86.     Defendants owed fiduciary duties to Plaintiff and the Class, including duties to act in the best interests of, and deal fairly and honestly with, Plaintiff and the Class.

87.     Defendants violated their duty to act in the best interests of Plaintiff and the Class by using the IDP to enrich themselves at the expense of customers by paying customers unreasonably low interest rates and extracting unreasonable fees from interest accrued on customers' Deposit Accounts, as described above.

88.     Defendants also violated their duty to deal fairly and honestly with Plaintiff and the Class by making material misrepresentations and omissions in the IDP Program Documents, as described above.

89.     Further, Defendants violated their duty to act with reasonable care to verify the truthfulness of the information set forth in the IDP Program Documents, which was materially misleading and omitted material facts for the reasons described above.

90.     As a direct and proximate result of Defendants' breach of fiduciary duties, Plaintiff and the Class suffered damages and are entitled to recover such damages from Defendants.

COUNT II

**BREACH OF CONTRACT
AGAINST ALL DEFENDANTS**

91.     Plaintiff incorporates paragraphs 10-67 as though fully set forth herein.

92.    Plaintiff and Class members were parties to the IDP Program Documents with RBC CM. The IDP Program Documents set forth the contractual terms and conditions of the IDP. Royal Bank owned and controlled RBC CM.

93.    Pursuant to the IDP Program Documents, RBC CM was contractually obligated to act as an agent on behalf of Plaintiff and the Class, and, thus, was contractually obligated to act in Plaintiff's and the Class' best interests in seeking and negotiating reasonable sweep interest rates and extracting reasonable fees from the interest rates paid by the Program Banks under the IDP.

94.    RBC CM breached its contractual obligations by (i) extracting unreasonable, unjustified, and arbitrary fees from the interest accrued on the Deposit Accounts and (ii) failing to provide Plaintiff and the Class with reasonable interest rates on their deposits in the IDP. Rather, the sweep interest rates provided by RBC CM were unreasonably low and well below several objective benchmarks including the federal funds rate, which increased dramatically during the Class Period while the interest rates paid to customers in the IDP largely remained flat. As such, RBC CM denied Plaintiff and the Class the full benefit of their bargain under the IDP Program Documents.

95.    As a direct and proximate result of RBC CM's breaches of contract, Plaintiff and the Class sustained damages.

COUNT III

**BREACH OF IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING AGAINST ALL DEFENDANTS**

96.    Plaintiff incorporates paragraphs 10-67 as though fully set forth herein.

97.    Plaintiff and Class members were parties to the IDP Program Documents with RBC CM. The IDP Program Documents set forth the contractual terms and conditions of the IDP.  Royal Bank owned and controlled RBC CM.

98.    Implicit in the IDP Program Documents were duties of good faith and fair dealing. Defendants breached their duties of good faith and fair dealing by (i) extracting unreasonable, unjustified, and arbitrary fees from the interest accrued on the Deposit Accounts and (ii) failing to provide Plaintiff and the Class with fair and reasonable sweep interest rates on their cash deposits in the IDP. Rather, the sweep interest rates provided by Defendants were well below several objective benchmarks including the federal funds rate, which increased dramatically during the Class Period while the sweep interest rates largely remained flat. As such, Defendants acted in bad faith and denied Plaintiff and the Class the full benefit of their bargain under the IDP Program Documents.

99.    As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class sustained damages.

COUNT IV

**NEGLIGENCE**
**AGAINST ALL DEFENDANTS**

100.    Plaintiff incorporates paragraphs 10-63 as though fully set forth herein.

101.    RBC CM was the agent of customers enrolled in the IDP, including Plaintiff and the Class. RBC CM also facilitated the IDP by accepting payments from customers through its online investment platform, which were swept into the IDP. Royal Bank owned and controlled RBC CM.

102.    Defendants owed Plaintiff and the Class a duty to act with reasonable care in connection with their cash sweep balances deposited and maintained in the IDP.

103.    Defendants' conduct with respect to the IDP, as described above, was negligent. By failing to provide Plaintiff and the Class with fair and reasonable sweep interest rates on their cash sweep balances in the IDP, Defendants breached their duty to act with reasonable care.

104.    Defendants' negligence directly and proximately caused harm to Plaintiff and the Class.

### COUNT V

**NEGLIGENT MISREPRESENTATIONS
AND OMISSIONS AGAINST ALL DEFENDANTS**

105.    Plaintiff incorporates paragraphs 10-63 and 72-75 as though fully set forth herein.

106.    RBC CM was the agent of customers enrolled in the IDP, including Plaintiff and the Class. Royal Bank owned and controlled RBC CM.

107.    Defendants owed Plaintiff and the Class a duty to act with reasonable care in connection with their cash sweep balances deposited and maintained in the IDP.

108.    Defendants negligently made material misrepresentations and omissions in the IDP Program Documents, as described above, which were posted on RBC's website.

109.    Plaintiff and the proposed Class justifiably relied on Defendants' IDP Program Documents and accordingly deposited and maintained cash balances in the IDP to their detriment.

110.    Defendants' material misrepresentations and omissions directly and proximately caused harm to Plaintiff and the members of the proposed Class.

### COUNT VI

**VIOLATION OF NEW YORK GENERAL
BUSINESS LAW §349 AGAINST ALL DEFENDANTS**

111.    Plaintiff incorporates paragraphs 10-63 as though fully set forth herein.

112.    Defendants' acts and practices with respect to the IDP constitute unlawful, unfair, misleading, and deceptive business acts and practices in violation of Section 349 of New York's General Business Law ("GBL"). Defendants unlawfully and unfairly benefitted and enriched themselves and misled and deceived customers in the IDP through, among other things: (a) paying unreasonably low interest rates to customers; (b) extracting unreasonable fees from interest paid

to customers; (c) abusing the managerial discretion provided under the IDP; (d) breaching the fiduciary, contractual, and other duties arising under the IDP; and (e) making false and misleading statements and omissions relating to such interest rates and duties in the IDP Program Documents.

113.    Defendants' misleading and deceptive business acts and practices with respect to the IDP adversely impacted Plaintiff and the Class, and, therefore, constitute consumer-oriented conduct under GBL §349, which resulted in direct harm to Plaintiff and the Class.

114.    Accordingly, Plaintiff and the Class seek appropriate relief under GBL §349, including injunctive relief and damages.

COUNT VII

**UNJUST ENRICHMENT
AGAINST ALL DEFENDANTS**

115.    Plaintiff incorporates paragraphs 10-63 as though fully set forth herein.

116.    Defendants financially benefitted from the unlawful acts alleged herein by paying Plaintiff and the Class unreasonably low and below-market interest payments under the IDP. These unlawful acts caused Plaintiff and the Class to suffer injury and monetary loss.

117.    As a result of the unlawful acts alleged herein, Defendants were unjustly enriched at the expense of Plaintiff and the Class.

118.    Defendants have received, and are holding, funds belonging to Plaintiff and the Class, which in equity Defendants should not be permitted to keep but should be required to refund to Plaintiff and the Class.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for relief and judgment, as follows:

A.      Declaring that this action is a proper class action, certifying the Class, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as Class Counsel for the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding compensatory damages in favor of Plaintiff and the Class for all damages sustained as a result of Defendants' wrongdoing, in amounts to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees;

D.      Ordering rescission of the IDP Program Documents and restitution of all fees and other benefits received by Defendants thereunder; and

E.      Such other and further relief as the Court deems appropriate.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED:  May 30, 2025                         ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                             STEPHEN R. ASTLEY
                                             ANDREW T. REES
                                             SCOTT I. DION
                                             ALEX KAPLAN
                                             RENE A. GONZALEZ


                                                   *s/ Stephen R. Astley*
                                             _____
                                             STEPHEN R. ASTLEY

                                             225 NE Mizner Boulevard, Suite 720
                                             Boca Raton, FL  33432
                                             Telephone:  561/750-3000
                                             sastley@rgrdlaw.com
                                             arees@rgrdlaw.com
                                             sdion@rgrdlaw.com
                                             akaplan@rgrdlaw.com
                                             rgonzalez@rgrdlaw.com

BOIES SCHILLER FLEXNER LLP
DAVID BOIES
ALEXANDER BOIES
MARC AYALA
JACK WILSON
55 Hudson Yards
New York, NY  10001
Telephone:  212-446-2300
dboies@bsfllp.com
aboies@bsfllp.com
mayala@bsfllp.com
jwilson@bsfllp.com

LAW OFFICE OF ALFRED G.
  YATES, JR., P.C.
ALFRED G. YATES, JR.
1575 McFarland Road, Suite 305
Pittsburgh, PA  15216
Telephone:  412/391-5164
yateslaw@aol.com

*Attorneys for Plaintiff*